UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

**MLP TECHNOLOGY, INC.**

    an Ohio corporation,

        Plaintiff,

v.

**LIFEMED ID, INC.**

    a California corporation,

        Defendant.

Civil Action No. 5:13-cv-00909

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**

Plaintiff MLP Technology, Inc. ("MLP" or "Plaintiff") respectfully submits this memorandum in opposition to the Motion to Transfer Venue filed by Defendant LifeMed ID, Inc. ("LifeMed" or "Defendant") because in a contest between whether this Court or the Eastern District of California should be the proper venue for this case, this Court is the clear winner.

LifeMed has not, and cannot, show that venue is improper in this district, especially since LifeMed does not contest the fact that personal jurisdiction is proper in this district.

Likewise, LifeMed has not, and cannot, show that the Eastern District of California is a more convenient venue than this Court for this action. The balance of traditional factors does not support transferring this case and this Court is the most appropriate venue for this case. Accordingly, LifeMed's motion should be denied.

### **FACTUAL BACKGROUND**

MLP is an Ohio Corporation with its principal place of business at 13020 Tilden Road, Hiram, Ohio 44234. *See* Skocic Dec. at 2. In fact, MLP's only offices are in Hiram. *Id.* Additionally, all of MLP's executives reside in Northern Ohio, and all of its business records -

including sales, accounting and other corporate documents - are located in Northern Ohio. *See Id.* at 7.  Ruth Skocic is the founder and CEO of MLP. *See Id.* at 1.

Since its founding, MLP has been a pioneer in the field of assisting individuals share their medical and personal information to authorized caregivers, medical personnel or first responders in a secure and timely manner. *See Id.* at 3.  MLP's innovative solution for managing and accessing an individual's medical information is described and claimed in several pending patent applications and U.S. Patent 8,234,125 ("'125 Patent"), which is asserted against LifeMed in the instant lawsuit. *See Id.* at 4.

The inventions described in the '125 Patent and the pending patent applications were conceived and reduced to practice in Ohio and, more specifically, in Northern Ohio. *See Id.* at 5  Therefore, all the documents and information relating to MLP's inventions are in Northern Ohio. *See Id.*  Furthermore, the products embodying the technology described in the '125 Patent were developed, tested, and currently implemented *only* in Northern Ohio. *See Id.* at 6.

In December 2012, MLP began discussions with LifeMed and its CEO David Batchelor over email and several phone calls on a strategic partnership between the two companies. *See Id.* at 8.  During the course of these conversations, MLP notified LifeMed of its patent portfolio, including the '125 Patent, and provided LifeMed with a copy of the '125 Patent. *See Id.*

Contrary to David Batchelor's assertions in his declaration in support of LifeMed's motion to transfer, LifeMed sells and offers to sell the accused LifeMed products (SecureReg) nationwide using a network of distributors. *See* Ex. E.  Indeed, LifeMed has installed the accused SecureReg system at least in hospitals in Texas, New Hampshire, New York and Florida. *See* Exs. A-D respectively.

IdentiSys, Inc. ("IdentiSys") is one of LifeMed's distributors that sells or offers to sell the accused LifeMed products in 26 states, including in Ohio. *See Id.* at 9; *See also* Ex E. On June 6, 2013, Ms. Skocic had a telephone conversation with Laurie Bosu, IdentiSys's District Sales Manager for Northern Ohio. *See Id.* During this call, Ms. Bosu informed Ms. Skocic that IdentiSys maintains a sales force throughout Ohio, including in and around Cincinnati, Akron, Cleveland, Youngstown, and Toledo. *See Id*. at 10. Ms. Bosu is based in Stow, Ohio and is responsible for the sale of IdentiSys's and its partner's products (like LifeMed's SecureReg products) in Northern Ohio. *See Id.* at 11. Importantly, she confirmed that she offers to sell LifeMed's SecureReg products in her sales region (Northern Ohio). *See Id.* at 12. Other IdentiSys sales representatives in Ohio sell or offer to sell IdentiSys's or its partner's products in their respective regions. *See Id.* at 11. Indeed, Ms. Bosu informed Ms. Skocic that IdentiSys sold LifeMed's SecureReg products to a customer in Texas. *See Id.* at 13.

On June 4, 2013, Ms. Skocic spoke with Roger Sigler at Identification Solutions Group ("ISG"). *See Id.* at 14. Mr. Sigler informed Ms. Skocic that ISG is a nationwide association of about 30 distributors in identification and security products. *See Id.* at 15. ISG does not sell or offer to sell any products. *See Id*. It also does not employ or maintain any sales personnel. *See Id*. The sales force is maintained by the distributors who are members of ISG, like IdentiSys. *See Id*.

## ANALYSIS

A. **Venue is Proper in The Northern District of Ohio**

    1. **LifeMed Cannot Argue That Venue is Improper in This Judicial District Because it Admits that Personal Jurisdiction is Proper in Ohio**

3

LifeMed's venue analysis is flawed because ignores the well-established principle that a corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction. *See* 28 U.S.C. §1391(c)(2)[1]; *See VE Holding Corporation v. Johnson Gas Appliance Company*, 917 F.2d 1574, 1578-79 (Fed. Cir. 1990) (holding that venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced."); *See also Avery Dennison Corporation v. Alien Technology Corporation*, 632 F.Supp.2d 700, 715 (N.D.OH 2008). Here, since LifeMed does not (and cannot) challenge personal jurisdiction in this district, it is deemed to reside in the Northern District of Ohio. Accordingly, venue is proper in this district.

LifeMed's venue analysis focuses solely on 28 U.S.C. §1400 and ignores the "residency" definition set forth in §1391(c). While §1400 certainly applies to patent cases, it is not meant to supersede §1391(c). *See VE Holding Corp.*, 917 F.2d at 1583; *See also Meteoro Amusement Corp. v. Six Flags*, 267 F.Supp.2d 263, 267 (N.D.N.Y. 2003) (stating "[a]s an initial matter, it is important to note that §§ 1391(c) and 1400(b) should be read coextensively instead of the latter being the exclusive authority for determination of venue in patent infringement cases.") In other words, the definition of "resides" found in §1391(c) is applicable to the venue analysis set forth in §1400. *See VE Holding Corp.*, 917 F.2d at 1583-84; *See also Sanofi-Aventis v. Synthon Holding BV,* 2008 WL 819295, *3 (M.D.N.C. 2008).

---

[1] Specifically, 28 U.S.C. §1391(c), a statutory provision that LifeMed fails to even mention in its brief, provides,

> (c) Residency.— For all venue purposes—
> (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business;

4

Setting aside the legal error in LifeMed's analysis, the facts make it clear that LifeMed does indeed "reside" in this district.

First, Mr. Batchelor admits that LifeMed had a contractual agreement with ISG as late as 2012 to establish a well-advertised distribution location in Ohio.[2] Second, Mr. Batchelor's declaration is tellingly silent on how many times the accused products have been offered for sale in Ohio. As attested to by Ms. Skocic, one of LifeMed's distributors (IdentiSys) continues to offer LifeMed's SecureReg for sale in Ohio. *See* Skocic Dec. at 9-12. Given that offers to sell give rise to infringement liability, LifeMed's alleged lack of sales in this district is of no consequence. Third, Mr. Batchelor also fails to mention that LifeMed attempted to enter into a partnership with MLP earlier this year and learned of the '125 Patent through these discussions. Indeed, it is this transaction that gives rise to MLP's allegations of willful infringement.

LifeMed contends that it does not "reside" in this district because, among other things, it allegedly has no sales in this district and has allegedly not directed any contacts to or within Ohio. These assertions, as shown above, are simply not relevant or not true. Facts show that LifeMed is continually attempting to sell the accused products in this district and this state and does maintain contacts with this state.

As a result, under §1391, LifeMed resides in the Northern District of Ohio, and venue is proper here.[3] LifeMed's 12(b)(3) motion for improper venue should, therefore, be denied.

---

[2] Mr. Batchelor's statements regarding ISG are a red herring and misleading. While he notes that ISG never had any sales personnel in Ohio, Mr. Batchelor fails to note that ISG is an association of about 30 distributors in identification and security products. *See* Skocic Dec. at 15. ISG does not sell or offer to sell any products. It also does not employ or maintain any sales personnel. The sales force is maintained by the distributors who are members of ISG, like IdentiSys.

[3] 28 U.S.C. §1400 also provides that venue is proper in a district "where the defendant has committed acts of infringement ***and*** has a regular and established place of business." (emphasis added) Although

5

### B. LifeMed's Forum *Non Conveniens* Argument is Not Meritorious Because Ohio is the More Convenient Forum

LifeMed's motion should also be denied under the forum *non conveniens* standard set forth in 28 U.S.C. § 1404.

#### 1. Relevant Legal Standard

In making a determination to transfer a case based on forum *non conveniens*, the Court must consider: (1) the availability of an adequate alternative forum; (2) appropriate deference to the plaintiff's choice of forum; (3) "public interest factors"; and (4) "private interest factors." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). A case should not be dismissed unless these factors balance strongly in favor of the defendant. *Gulf Oil,* 330 U.S. at 507-08; *See also Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (holding "[u]nless the balance is strongly in favor of the defendant, the plaintiffs [sic] choice of forum should rarely be disturbed."). Indeed, transfer is appropriate only when a trial in the chosen forum would result in vexation and oppression to the defendant that would far outweigh the plaintiff's convenience or when the chosen forum would generate administrative and legal entanglements for the trial court. *See Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947). Moreover, transfer is not appropriate if the result is simply to shift the inconvenience from one party to another. *St. Joseph Solutions, LLC v. Microtek Medical, Inc.*, 2011 WL 5914010, *5 (S.D.OH 2011).

---

LifeMed relies on this provision to argue that venue is improper, this provision is inapplicable. Specifically, this provision applies only if LifeMed can show that no infringement took place in this district. LifeMed cannot make this showing given Ms. Bosu's statements to Ms. Skocic that IdentiSys offers to sell SecureReg to customers in Northern Ohio.

LifeMed, as the movant, bears the burden of showing that "fairness and practicality ***strongly favor*** a transfer of venue" to California. *U.S. v. $1,111,120.00 in U.S. Currency*, 2011 WL 1397440, \*3 (S.D.OH 2011)(emphasis added); *See also Lake v. Richardson-Merrell, Inc.*, 538 F.Supp. 262, 266 (N.D. Ohio 1982). LifeMed's showing is grossly inadequate because it fails to consider any of the public interest factors, and supports the private interest factors with half-truths. As shown below, a proper analysis of the appropriate factors shows that fairness and practicality compels keeping this case in the Northern District of Ohio.

    2. Analysis

        **i. This Court Should Give Deference to MLP's Choice of Forum**

MLP's choice of forum should be afforded significant deference. This is especially true when the plaintiff is a resident of the forum. *See Piper Aircraft,* 454 U.S. at 255-56; *See also Union Cent. Life, Ins. Co. v. Anchor Fin. Servs., LLC*, 2010 U.S. Dist. LEXIS 139405, at \*7 (S.D. Ohio May 21, 2010) ("A plaintiff's choice of forum is generally entitled to substantial weight, especially when a corporate plaintiff initiates the action in the district of its corporate headquarters.").

This substantial weight given to the plaintiff's choice of forum may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255; *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("the plaintiff's choice of forum should rarely be disturbed"). The United States Supreme Court reasoned in *Piper Aircraft*, that when the home forum has been chosen, it is logical to assume that this choice is convenient, thus satisfying the central purpose of any forum *non conveniens* inquiry.

In this case, because MLP is based in this judicial district (in Hiram), its choice of an Ohio forum should be accorded "substantial weight" and should not be disturbed. *See Union Cent. Life, Ins. Co.*, 2010 U.S. Dist. LEXIS 139405, at *7; *See also Wilson v. Humphreys (Cayman), Ltd.*, 916 F.2d 1239, 1246-47 (7th Cir. 1990).

LifeMed argues generally that MLP's choice of forum should be ignored because (1) none of the operative facts allegedly occurred in this forum, and (2) allegedly all of the unlawful acts occurred in the Eastern District of California. These two statements are factually untrue.

Contrary to LifeMed's assertions, many of the operative facts did occur in this forum. As an example, LifeMed has infringed the patent by at least offering to sell the accused products in this district and throughout this state using a distributor. Specifically, at least IdentiSys (a LifeMed distributor) has offered to sell the accused SecureReg system in Ohio. In addition to offering to sell the accused products in Ohio, LifeMed also established contact with this district when it attempted to enter into a strategic partnership with MLP. This transaction gives rise to MLP's allegations of willful infringement. Also, the invention of the '125 patent was conceived of and reduced to practice in this district. As a result, many of the operative facts relevant to this case occurred here.

LifeMed also argues *all* of the unlawful acts occurred in the Eastern District of California and that development, testing, marketing and research of the accused product took place in California. (*i.e.*, that the Eastern District of California is the "center of gravity" with respect to the alleged infringement). This statement is also not entirely accurate.

First, the Eastern District of California is not the "center of gravity" because the alleged infringement is not limited to the Eastern District of California. As noted above (*See* Exs. A-D), LifeMed has deployed the accused system to hospitals in at least Texas, New Hampshire, New

York, and Florida. These hospitals infringe at least some of the asserted claims when they use the accused system. As a result, infringement of the claims has occurred in several states and is not, as LifeMed claims, limited to California.

Second, at least one court in this state has considered and rejected the center-of- gravity test where, as here, the plaintiff has filed in its home forum because "it gives no weight to the patent holder's activities and gives too much weight to the infringing conduct." *Max Rack, Inc. v. Hoist Fitness Sys., Inc.*, No. 2:05-cv-784, 2006 U.S. Dist. LEXIS 13374, at *15-16 (S.D. Ohio Mar. 10, 2006); *see also Lucent Techs., Inc. v. Aspect Telecomms. Corp.*, No. 97-1618, 1997 U.S. Dist. LEXIS 12811, at *7 (E.D. Pa. Aug. 20, 1997) (criticizing the center of gravity test because it "gives no weight to the plaintiff's activities in inventing and licensing the patent. Rather, the test gives inordinate weight to the 'accused activities' by focusing solely on the geographical area where the defendant designed and developed the allegedly infringing product"). Here, while some of the infringing conduct took place in California, the invention that is claimed in the asserted patent was conceived and reduced to practice in Ohio and all the evidence (including witnesses) related this important issue in the case is in this district. For reasons set forth in *Max-Rack* and *Lucent Techs*, this Court should reject the "center of gravity" test.

On this basis, MLP's choice of forum should be afforded substantial weight, and LifeMed has failed to overcome this presumption.

### ii. The Public Interest Factors Weigh Strongly in Favor of Denying LifeMed's Motion to Transfer

In determining whether public interest factors *clearly* overcome MLP's choice of forum, the Court must consider: (1) the local interest in having localized controversies decided at

"home"; (2) the unfairness of imposing jury duty "upon the people of a community which has no relation to the litigation;" (3) "administrative difficulties stemming from court congestion;" and (4) the appropriateness of holding the trial in a forum that is "at home" with the applicable law. *Gulf Oil*, 330 U.S. at 508-09.  LifeMed has failed to address any of these factors in its brief and, as a result, has failed to override MLP's choice of forum.  These "public interests" clearly militate in favor of maintaining venue in Ohio.

### a.  Local Interest and Unfairness to Jury Pool

MLP has a great interest in having this controversy decided in Ohio by an Ohio Jury. MLP is an Ohio Corporation and its only office is in Hiram, Ohio.  This Court has a much stronger interest in this case than California because Ohio has an interest in protecting the rights of its citizens and businesses.  LifeMed's infringing activity is harming MLP's valuable patent rights, and this Court has a significant interest in seeing that this harm to one of its citizens is redressed.  Therefore, this Court has a much stronger relation to the cause of action than the California court. This factor weighs against transfer of this case.

Moreover, because such a substantial relationship exists between this controversy and the state of Ohio, trying this case in the Northern District of Ohio would not unnecessarily burden an Ohio jury or this Court.

LifeMed has not demonstrated otherwise and, therefore, these factors favor maintaining the instant case in this district.

### b.  Court Congestion

This factor also weighs in favor of keeping this case in Ohio.  According to the latest Federal Court statistics (See Ex. F), the median time from filing of a civil case to trial in this Court for the 12-month period closing in September 2012 is 23.6 months.  In contrast, the

median time in the Eastern District of California is 47.2 months. This statistic clearly underscores the congestion in the California court to which transfer is sought. If this case is transferred, MLP will have to wait almost four years before it is heard on the merits. Such delay is unnecessary and inequitable. Accordingly, this factor clearly militates in favor of maintaining this case in Ohio.

### c. Familiarity Of The Court With Applicable Law

Generally speaking, because a patent infringement suit arises under federal law, all federal district courts are similarly familiar with the controlling law and competent to adjudicate such claims. This factor as a result is neutral at best with respect to transfer.

\*\*\*

In view of the foregoing, the balance of the public interest factors, and particularly considering the interest of judicial efficiency, weigh strongly against transferring this case to California.

### iii. The Private Interest Factors Weigh Strongly in Favor of Denying LifeMed's Motion to Transfer

A district court must consider the private interests of the parties when deciding a motion to transfer venue. *Gulf Oil,* 330 U.S. at 508. The private interests include: (1) the relative ease of access to sources of proof; (2) the ability to compel unwilling witnesses to attend and the cost involved in obtaining the attendance of willing witnesses; (3) the possibility of viewing the premises involved in the suit, if such a view is appropriate; and (4) "all other practical problems that make trial of a case easy, expedition and inexpensive." *Id*.

### a. Ease of Access to Sources of Proof

LifeMed states, without any evidence in support, that sources of evidence are in California. This, as noted above, is incorrect.

Evidence regarding conception and reduction to practice of the claimed invention is in Ohio. Moreover, proof on LifeMed's infringement is not (as LifeMed claims) limited to California. While some of the evidence will be located in California, the third parties using the accused products (and, therefore, practicing at least the claimed methods) are located at least in Texas, New Hampshire, New York, and Florida. This evidence can be more easily obtained from Ohio (as opposed to California) simply due to geographical proximity.

LifeMed's argument that this case should be transferred to location of documentary evidence is likewise meritless. Courts in Ohio have noted the ease with which documents can be transferred electronically and thus have given this factor minimal weight. *See Tyler v. Sento Corp.*, No. 05:08CV1047, 2008 U.S. Dist. LEXIS 123709, at *29 (N.D. Ohio Oct. 17, 2008) (noting that "in the age of electronic documents and email, any documents can be easily moved from one place to the other").

Under LifeMed's position, any inconvenience under this factor would simply be shifted from LifeMed to MLP, a fact that weighs against transfer. *See, e.g.*, *AMF Inc. v. Computer Automation, Inc.*, 532 F. Supp. 1335, 1340 (S.D. Ohio 1982) ("Given the existence of relevant records in this district as well as in California, the inconvenience would appear to be equally divided, thus precluding transfer"). This factor, therefore, militates against transfer.

      b. **Availability of compulsory process**

LifeMed has not provided one example of a necessary, yet unwilling, witness that LifeMed would not be able to bring to trial. Indeed, LifeMed has not identified *any* witnesses that may be necessary in this case, nor has it offered *any* evidence that its witnesses would be

12

unwilling or unable to testify at trial. *Union Cent.,* 2010 U.S. Dist. LEXIS 139405, at *6 ("When a party moves for change of venue based on inconvenience to witnesses or the burden of transporting documents, the party should provide ***specific evidence*** of inconvenience) (emphasis added).  At a minimum, because there will be witnesses from ***all*** parties who may be needed to testify at trial, moving the case from Ohio to California would merely shift any burden from LifeMed to MLP, thus weighing against transfer. *Union Cent.*, 2010 U.S. Dist. LEXIS 139405, at *6.  This factor also weighs against transfer, and LifeMed has provided no evidence to the contrary.

***

In view of the foregoing, MLP has demonstrated that the private interests weigh strongly against transferring this action to California. LifeMed has offered no evidence, authority or argument to rebut this strong showing and, therefore, the motion to transfer should be denied.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to transfer  in its entirety.

Dated:  June 14, 2013

**SUTTER O'CONNELL CO.**

By:  /s/ Lawrence A. Sutter
Lawrence A. Sutter (#0042664)
Denise A. Dickerson (#0064947)
1301 East 9th Street
Cleveland, OH 44114
Tel: (216) 928-2200
Fax: (216) 928-4400
lsutter@sutter-law.com
ddickerson@sutter-law.com

*Of Counsel*
**SUGHRUE MION, PLLC**
John F. Rabena
Chandran B. Iyer
Eric S. Barr
2100 Pennsylvania Ave., N.W.
Washington, DC 20037
Tel: (202) 293-7060
Fax: (202) 293-7860
jrabena@sughrue.com
cbiyer@sughrue.com
ebarr@sughrue.com

**SUGHRUE MION, PLLC**
Antony M. Novom
4250 Executive Square
Suite 900
La Jolla, California  92037
Tel: (858) 795-1180
Fax: (858) 795-1199
anovom@sughrue.com

14